NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Diane M. CAPRIGLIONE, and Scott J. CAPRIGLIONE<br><br>Plaintiffs,<br><br>v.<br><br>RADISSON HOTELS INTERATIONAL, INC.<br><br>Defendant. | Civil No. 10-2845 (AET)<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter comes before the Court upon Defendant Radisson Hotels International, Inc.'s (RHI) Motion for Summary Judgment [docket # 19]. Plaintiffs Diane Capriglione and Scott Caprilglione oppose the motion [21]. The Court has decided the motion upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion is granted.

## II. BACKGROUND

This case arises out of injuries sustained by Plaintiff Diane Capriglione, who while staying at the Radisson Hotel in Racine, Wisconsin, (Hotel) on June 3, 2007, fell and fractured her left hand allegedly as a result of the disrepair/hazardous condition of the sidewalk and roadway abutting the entrance of the hotel. (Amend. Compl. ¶ 7). [7].

On June 3, 2010, Plaintiffs filed a Complaint [1] alleging that Plaintiff Diane Capriglione's injury was caused by negligence on the part of Graves Hospitality Corporation, the

1

company that owned the Radisson Hotel Racine Harbourwalk, the Hotel itself, and John Doe. Additionally, Plaintiff Scott Capriglione asserted claims for loss of consortium as a result of the injury to his wife. Graves Hospitality Corporation and the Hotel filed a Motion to Dismiss for lack of jurisdiction on September 26, 2010 [5]. Plaintiffs subsequently amended the complaint on October 18, 2010, joining RHI as a defendant. (*See* Amend. Compl.).

On January 10, 2011, this Court dismissed Plaintiff's Complaint against Graves Hospitality Corporation and Harbourwalk Hotel Limited Partnership d/b/a Radisson Hotel Racine Harbourwalk for lack of jurisdiction. [15].

Defendant RHI now moves for Summary Judgment as to the claims asserted against it. [19].

### III.     ANALYSIS

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would

not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

### B. New Jersey Tort Law

The Court has jurisdiction in this case pursuant to 28 U.S.C. 1332(a)(1). Accordingly, while we follow federal procedural rules, we apply the substantive law of the state in which this Court sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The crux of the present dispute is whether Defendant is liable to Plaintiffs under multiple theories of negligence. Because negligence sounds in common law tort doctrine, we apply New Jersey substantive law. *See Marino v. Industrial Crating Co.*, 358 F.3d 241, 243 n.2 (3d Cir. 2004).

To prove negligence under New Jersey common law, a plaintiff must establish: "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." *Meier v. D'Ambose*, 17 A.3d 271, 274 (N.J. Super. Ct. App. Div. 2011) (citing *Brunson v. Affinity Fed. Cred. Union*, 972 A.2d 1112, 1123 (N.J. 2009).

The "prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff." *Strachan v. John F. Kennedy Memorial Hosp.*, 538 A.2d 346, 349 (N.J. 1988). Whether a duty of care exists is a question of law for the court to analyze in light of "the relationship of the parties, the nature of the attendant risk, and the public interest in the proposed solution." *See id.* at 526; *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007).

In New Jersey, the plaintiff bears the burden of proving that the defendant breached the

duty of care owed to them. *See Jarrah v. Trump Hotels & Casino Resorts*, 487 F.Supp.2d 522, 525 (D.N.J.2007).

### C. Application

In the instant action, Plaintiffs contend that Defendant owed a duty of care to Plaintiffs by virtue of its License Agreement with Radisson Racine Hotel in which Defendant incurred certain responsibilities in regard to planning, design inspections, safety and quality standards in the operation of the hotel. (Pls. Opp. Br., at 6). In the alternative, Plaintiffs argue, Defendant owed a duty to Plaintiffs under "vicarious liability, and or agency theory, agency by estoppel, employer-employee, apparent authority theories." *Id*. Plaintiffs have failed to show adequate facts to prove that RHI owes a duty of care to Plaintiffs under any of these theories.

Generally, a proprietor of premises to which the public is invited for a business purpose owes a duty of reasonable care to those who enter the premises upon that invitation. *Abraham v. Raso*, 997 F.Supp. 611, 613 (D.N.J.1998) (internal citations omitted). However, Plaintiffs seek to establish that RHI was directly negligent in this action, despite evidence that RHI as a franchisor does not own or operate the hotel where Plaintiff Diane Capriglione's injury occurred.

According to Plaintiff, there are disputed issues of fact as to whether RHI controlled, or had the right to control, the hotel premises because (1) the License Agreement stated that the RHI had the ability to come in to the hotel and exercise its right to examine and inspect the hotel and (2) an affidavit by Raj Rana, Vice President of RHI, notes that RHI did enter the premises and conduct the inspections periodically. (Pls. Opp. Br., at 16–17). Plaintiffs contend that given these inspections "there is a triable material fact at issue as [*sic*] whether or not Radisson Hotels International (RHI) and or a reasonable person using ordinary care would have or did notice the

4

defects of lighting, the dangerous incline and or the pothole at the entrance to the hotel." (Pls. Opp. Br., at 18).

However, there is no genuine dispute that RHI lacked both ownership interest in and control over the day-to-day operations of the Hotel. Plaintiffs have presented no evidence that RHI had the power to control the daily maintenance of the Hotel. Despite Plaintiffs' arguments to the contrary, the right to conduct periodic inspections to ensure consistency and quality of the Radisson brand does not give rise to the power to control the daily maintenance of the premises. Courts that have addressed the issue of duty require franchisors to exercise more than a right to control uniformity of appearance, products and administration in order to find a duty of care. *See, e.g.*, *Kerl v. Dennis Rasmussen, Inc.,* 682 N.W.2d. 328, 338 (Wis. 2004); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 814 (Iowa 1994); *Helmchen v. White Hen Pantry, Inc*., 685 N.E.2d 180, 181 (Ind. Ct. App. 1997).

Indeed, Plaintiffs have failed to cite a single case that supports the proposition that a franchisor has a duty to the guest of a hotel of which it does not directly own or exercise control. Nor has this Court found any such case. Instead Plaintiffs question whether RHI should properly be considered a franchisor, noting that the License Agreement does not make any mention of the word franchise, franchisor nor franchisee. (Pls. Opp. Br., at 5–6; 22–23). Under New Jersey law, however, any determination as to the existence or non-existence of a franchise relationship requires a factual evaluation of the legal rights and obligations between the parties. *See* N.J.S.A. 56:10-3(a) (defining a "franchise" as one requiring "a written agreement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement or otherwise.").

The terms of the License Agreement between RHI and Harbourwalk Hotel Limited Partnership clearly provide for a franchise relationship, permitting the use of the "Radisson" mark, while leaving all matters relating to the management and operation to the licensee Hotel. (Def.'s Mot. For Summ. J., Ex. F, §7). Plaintiffs were permitted ample time in discovery to explore the relationship between RHI and Harbourwalk Hotel Limited Partnership, but presented no evidence of agreements or specific terms of the relationship between the entities that would suggest an alternate definition of this relationship would be appropriate.

Nor have Plaintiffs established that Defendant owed a duty to Plaintiffs under vicarious liability, employer-employee, agency and/or apparent authority theories. As an initial matter, Plaintiffs have not demonstrated that the relationship between the Hotel and RHI, as franchisor, evinces the degree of control that would warrant the imposition of vicarious liability under agency principles. *See J.M.L. ex rel. T.G. v. A.M.P.*, 379 N.J. Super. 142, 152 (N.J. Super. Ct. App. Div. 2005). As noted earlier, RHI did not manage the day-to-day activities of the Hotel or exercise sufficient control over the operations of its franchisees generally to make it liable for the actions or omissions of the Hotel. As an affidavit by Raj Rana, Vice President of RHI, notes, pursuant to the terms of the License Agreement with hotels under the Radisson Franchise System, the franchisee hotel and, not RHI, is responsible for the maintenance, upkeep, and security of the Hotel premises, as well as hiring, training, supervising, and terminating employees, and general management of the Hotel. (Def.'s Mot. For Summ. J., Ex. G, §§ 12, 14, 15). Because RHI is not involved in the personnel matters of the hotel, Plaintiffs have not demonstrated that there existed an employer-employee relationship between RHI and the hotel.

Nor would it be appropriate to impose liability under agency or apparent authority theories. Under New Jersey law, "a principal is liable for the tortious acts of an agent acting

within the scope of his or her authority." *Baldasarre v. Butler*, 625 A.2d 458, 464 (1993).  This agency relationship can be established through apparent authority, which "arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." *Dymburt v. Rao*, 881 F.Supp. 942, 945 (D.N.J.1995).

In order to recover against the principal under apparent authority, a party must show that: "(1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances." *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 374 (D.N.J.2004); *see also Gizzi v. Texaco*, 437 F.2d 308, 309 (3rd Cir.1971).  "[T]he essential element of reliance must be present before apparent authority can be found." *Wilzig v. Sisselman*, 506 A.2d 1238 (N.J. Super. Ct. App. Div. 1986).

Plaintiffs submit as exhibits photos of signage and the results of certain internet searches in order to suggest that RHI holds itself out as the apparent owner of the hotel, and that representations of agency were made to induce—and in fact did induce—reliance and confidence in consumers in the reputation of the Radisson franchise. (Pls. Opp. Br., Ex. 4–8; 10–11). Plaintiff Diane Capriglione also submits an affidavit stating that she based her decision to stay at the Hotel due to the "quality of rooms, service, and overall conditions at Radisson hotels." (Pls. Notice of Answer, ¶ 6).  Plaintiffs, however, fail to demonstrate any reliance upon any actions by RHI.  Although Plaintiff contends that she believed all Radisson Hotels were owned and run by one main corporation, (Pls. Notice of Answer, ¶ 7), the Court notes that Plaintiffs initially identified Graves Hospitality Corporation as the corporate owner of the hotel in its initial Complaint, and in the Amended Complaint, Plaintiffs acknowledged that Radisson Racine Hotel

7

was believed to be "a subsidiary, franchise, division, or business association of some sort" of RHI, ( Amend. Compl. ¶ 2).  Thus, Plaintiffs have not demonstrated any representations made by RHI or their reliance upon such conduct to support this Court finding that RHI owed them a duty pursuant to the apparent authority doctrine.

## IV.   CONCLUSION

For the reasons stated above, and for good cause shown, the Defendant's motion for summary judgment is granted.  An appropriate order will follow.

 _/s/ Anne E. Thompson_____
ANNE E. THOMPSON, U.S.D.J.

Dated___October 5, 2011_____